UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | :    CRIMINAL NO. 07-0224 (RWR) |
| v. | : |
| JAIME GALVEZ a/k/a JIM GALVEZ, | : |
| Defendant. | : |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia and the Fraud Section of the Criminal Division, United States Department of Justice, hereby submits this Memorandum in Aid of Sentencing defendant Jaime Galvez. Pursuant to a plea agreement, the defendant pleaded guilty to one count of destroying or concealing records in a federal investigation (18 U.S.C. § 1519) and one count of perjury (18 U.S.C. § 1621). As discussed below, the government requests that the Court (1) impose a sentence of 15 months in prison, which is in the middle range of the stipulated United States Sentencing Guidelines range of 12-18 months; (2) impose a two year term of supervised release; and (3) impose a fine of $30,000, which is at the top of the $3000 to $30,000 Sentencing Guidelines fine range.

**FACTUAL BACKGROUND**

On September 4, 2007, the United States Attorney's Office and the Fraud Section of the Criminal Division, United States Department of Justice, filed a two-count Information charging Galvez with one count of destroying or concealing records in a federal investigation (18 U.S.C. § 1519) and one count of perjury (18 U.S.C. § 1621). On October 5, 2007, Galvez pled guilty to the charges. In pleading guilty, Galvez admitted that between April 2006 and July 2006, he

intentionally destroyed and concealed records from a federal grand jury and also lied to a grand jury about his knowledge of key information related to two individuals who were under investigation.

With respect to Galvez's role in intentionally destroying and concealing records from a federal grand jury, Galvez admitted that on or about April 11, 2006, a grand jury in Washington, D.C. served a grand jury subpoena on the custodian of records of J.G. International Freight Corporation ("JG International"), a company he owned and controlled. That subpoena demanded that JG International produce documents to the grand jury, including "[a]ll bills of lading and shipping documents related to work performed on behalf of" Dankim Trading and Daniel Curran[1] as well as EMMCO, ECCO, and Edward Chua.[2] The subpoena also demanded that JG International produce "all correspondence" between JG International, Curran, and Chua. After receiving the grand jury subpoena, Galvez caused the concealment and destruction of approximately 35 commercial invoices that JG International received from Dankim Trading, EMMCO, and ECCO that materially and substantially overstated the dollar value of the goods actually shipped overseas by JG International for those clients. On or about May 11, 2006, Galvez caused JG International to produce documents in response to the grand jury subpoena,

---

[1]   Curran pleaded guilty to owning and controlling Dankim Trading, and using it in connection with approximately $30 million worth of fraudulent loan transactions involving the Export-Import Bank of the United States ("Ex-Im Bank"). *See* Statement of the Offense, *United States v. Daniel Curran*, Crim. No. 07-0057 (RWR). Curran is cooperating with the government and awaiting sentencing.

[2]   Chua pleaded guilty to owning and controlling EMMCO and ECCO, and using them in connection with approximately $10 million worth of fraudulent loan transactions involving the Ex-Im Bank. *See* Statement of the Offense, *United States v. Edward Chua*, Crim. No. 07-0122 (RWR). Chua is cooperating with the government and awaiting sentencing.

but Galvez and JG International did not produce the documents that Galvez caused to be concealed and destroyed. As a result of Galvez's obstruction, the investigation into Dankim Trading, EMMCO, ECCO, Curran and Chua was hindered and delayed, and documents that would have greatly assisted in the prosecution of Curran and Chua were destroyed.

On or about June 16, 2006, Galvez was served with a subpoena to testify before the grand jury in Washington, D.C. On or about July 6, 2006, after taking an oath before a federal grand jury and swearing that he would testify truly, Galvez willfully and knowingly lied in response to questions from the United States.[3] Specifically, Galvez told that grand jury that he did not know anything about Dankim Trading or Daniel Curran using false shipping documents or producing two different copies of commercial invoices - a "real" commercial invoice and a "fake" commercial invoice - to JG International. In reality, it was Galvez's idea for Curran and Chua to produce two different commercial invoices, and in each transaction that Galvez facilitated for Dankim Trading, EMMCO, and ECCO through JG International, Curran and Chua produced both "real" and "fake" commercial invoices to JG International. As a result of Galvez's lies to the grand jury, the investigation into Dankim Trading, EMMCO, and ECCO, and the owners of those companies - Daniel Curran and Edward Chua - was hindered and delayed.

Even after involving himself in a $40 million scheme to defraud a government agency, after causing material evidence of that scheme to be destroyed, after lying to law enforcement agents and the grand jury about his involvement, Galvez still apparently is trying to play fast and loose with the administration of justice. That is, since pleading guilty, Galvez has continued to

---

[3] Prior to testifying, Galvez was reminded of his constitutional right not to testify. Galvez was represented by counsel, albeit different counsel from his current counsel, at his grand jury appearance.

misrepresent his role in destroying and causing the destruction documents. Specifically, in the written statement Galvez provided to the Probation Office, he stated that "when I found out that there were invoices in the file, I got scared. . . . In my mind, it was just an irrelevant invoice in the file." Additionally, Galvez claimed that he only destroyed a "few of the invoices." These two statements seriously misrepresent reality and are a futile attempt by Galvez to minimize his role in this crime.

First, as Galvez admitted in the signed Statement of the Offense, he "found out" about two sets of invoices from Dankim Trading, EMMCO, and ECCO when they sent them to him, and he knew all along that the second, false invoice "materially and substantially overstated the dollar value of the goods actually shipped overseas by J.G. International . . ." Statement of the Offense ¶ 4. Further, Galvez's recent statement to the Probation Office that he thought the second, false invoice was "irrelevant" flies in the face of evidence from two witnesses that it was Galvez's idea for Dankim Trading, EMMCO, and ECCO to produce two invoices to JG International. According to those witnesses, Galvez wanted an invoice that would purportedly justify each of the bills of lading he produced - the real ones and the fake ones. In fact, Galvez threatened to cease making shipments on behalf of Edward Chua (owner of EMMCO and ECCO) until Chua began producing two invoices for each shipment. Moreover, Galvez's recent suggestion that the second, false invoice was "irrelevant" is belied by the fact that those "irrelevant" documents were the only documents that he (1) specifically caused to be destroyed in response to the grand jury subpoena, and (2) lied about when he went before the grand jury.

Second, notwithstanding the fact that Galvez informed the Probation Office that he and others destroyed "a few invoices," Galvez admitted in the Statement of the Offense that he

actually caused approximately 35 invoices to be destroyed.  Statement of the Offense ¶¶ 4, 5.  Additionally, a witness has informed law enforcement that JG International inadvertently failed to destroy two invoices and accidentally produced those two invoices to the Department of Justice.  When Galvez's wife (who also worked at JG International) found out about this fact, she reportedly was visibly angry.  Galvez's claim, therefore, that he destroyed "a few invoices" is false and misleading, and an attempt to minimize the significance of his criminal conduct.

### SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing Galvez.  These factors are discussed below numbered as they are in Section 3553(a).

**(1)  The nature and circumstances of the offense and the history and characteristics of the defendant.**

**(A) Nature and circumstances of the offense**

For a period of approximately four months in 2006, Galvez destroyed documents and lied to a federal grand jury for the purpose of protecting himself, as well as Curran and Chua, who were responsible for submitting approximately $40 million worth of fraudulent claims to the Ex-Im Bank.[4]  The documents destroyed by Galvez were proof that for a period of several years, Curran and Chua were falsifying commercial invoices that were sent to lending banks and to the Ex-Im Bank, and in so doing, illegally pocketing millions of dollars.  As a result of Galvez's conduct, the investigation into the Curran and Chua scheme to defraud the Ex-Im Bank was hindered and delayed.

---

[4]  See Statement of the Offense, United States v. Daniel Curran, Crim. No. 07-0057 (RWR); Statement of the Offense, United States v. Edward Chua, Crim. No. 07-0122 (RWR).

From approximately November 1999 through May 2005, Galvez - through JG International - served as the freight forwarder in approximately 35 shipments on behalf of Curran (Dankim Trading) and Chua (EMMCO and ECCO).  In each of those transactions, Galvez required Curran and Chua to prepare two commercial invoices with the same invoice number: one commercial invoice that accurately stated the dollar value of the goods to be shipped overseas by JG International; and a second commercial invoice that materially and substantially overstated the dollar value of the goods to be shipped overseas.  Curran and Chua obliged and began sending both sets of commercial invoices to JG International to obtain two different bills of lading:  one that matched the accurate commercial invoice; and one that matched the false commercial invoice.  Curran and Chua would then send the false commercial invoices and bills of lading to the lending banks and the Ex-Im Bank, while the true commercial invoices and bills of lading (indicating shipment of much less expensive goods) accompanied the actual shipments.

The only person - other than the targets of the investigation - who possessed both the real and fake invoices was Jaime Galvez.  But Galvez knew these documents could implicate himself, as well as his customers and others, in serious crimes and he intentionally set out to destroy the incriminating records that could prove the criminal conduct.  He then lied to a federal grand jury about his conduct.  He ultimately accepted responsibility for his criminal conduct not because of any self-reporting; rather, because he learned from the government that at least three witnesses would implicate him in the dual invoicing scheme.

**(B) The history and characteristics of the defendant**

Galvez was born and raised in the Philippines, where he earned a bachelor's degree from Adamson University in Manila.  Galvez moved to the United States in 1978 and earned a

master's degree in logistics from Pacific States University in Los Angeles, California. From 1982 through the present, Galvez has worked in the export business. In 1989, he opened JG International, an international freight forwarding business, and continued to operate that company through the present. By all appearances, Galvez is highly educated and generates a healthy income to support his family. Galvez lives in a well-furnished home in an upper-middle class neighborhood in Redondo Beach, California, and has a net worth of approximately $745,000.

Galvez has no criminal history. But as described in the Factual Background section, after committing the offenses described in the Information and Statement of the Offense, Galvez has continued to lie to agents of the United States.

**(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the pubic from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

For a period of several months, Galvez attempted to create the impression that he was cooperating with an ongoing investigation into approximately $80 million worth of fraudulent loan transactions involving the Ex-Im Bank. But all the while, Galvez was destroying key documents that he controlled and lying to investigators and to the grand jury responsible for investigating the Ex-Im Bank scheme. Galvez's sentence should reflect the seriousness of his crimes and the need to deter Galvez - as well as other witnesses who will appear before the grand jury - from engaging in such misconduct in the future.

Here, deterrence and the need to promote respect for the law are particularly important objectives. There are huge numbers of individuals and entities in this community and

throughout this country that receive grand jury subpoenas seeking their documents or their testimony. To a large extent, the efficiency and effectiveness of the criminal justice system are dependent upon them responding truthfully to those subpoenas. If appropriate and available, they may chose to exercise their constitutional rights not to respond or to remain silent. But if they chose to respond, they cannot obstruct justice by destroying documents and they cannot lie. Such lies and deceit waste limited government resources and, worse, promote a lawlessness that has no place in our society. The defendant's sentence, therefore, should serve as a message to the broader community that the criminal law will deal harshly with those who play fast and loose with the administration of justice.

The sentence imposed should also provide just punishment to Mr. Galvez for his criminal conduct. To date, Mr. Galvez has repeatedly made decision to lie and deceive, but the negative consequences of his conduct have befallen others - the American taxpayers, who have to pick up the bill for the underlying fraud scheme, and the administration of justice. He must now suffer himself the consequences of his continuously poor choices. Galvez chose to involve himself in a massive fraud scheme that involved processing dual invoices and bills of lading. He chose to direct others to destroy the incriminating invoices, knowing that they were responsive to a grand jury subpoena and that they would link him and others to the scheme. He chose to travel to Washington, D.C. to lie to a grand jury about his involvement in the scheme. And he chose to tell the Probation Office a version of his involvement in the scheme that is contrary to his prior admissions and the statements by other witnesses. A term of imprisonment within the middle range of the Guidelines would be severe enough to provide just punishment for such criminal and improper conduct.

As to the final consideration, the defendant does not appear to need further education or vocational training.

### (3) The kinds of sentences available

The maximum term of imprisonment for destroying or concealing records in a federal investigation is 20 years, with a term of supervised release of not more than 3 years. The maximum term of imprisonment for perjury is 5 years, with a term of supervised release of not more than 3 years.

### (4) The sentencing range established by the United States Sentencing Guidelines ("USSG")

The government and the defendant stipulated in the plea agreement to a Total Adjusted Offense Level for the offense of 13 with a resulting USSG range of 12-18 months.

The Probation Office has calculated the Total Adjusted Offense Level as 15, which results in a USSG range of 18-24 months. *See* PSR at pp. 8-9. The government disagrees with the additional two point enhancement imposed by the Probation Office for obstruction of justice.

In the plea agreement, the parties stipulated that the applicable fine range is $250,000 per count or twice the pecuniary gain or loss. The Probation Office calculates the maximum fine as $250,000 and a USSG fine range of $4,500 to $40,000. See PSR at 19, ¶¶ 77, 79.

### (5) Any pertinent policy statement issued by the USSC

The government is unaware of any pertinent policy statements issued by the USSC.

### (6) The need to avoid unwarranted sentencing disparities among defendants with similar records

A guidelines sentence would help prevent such disparities between the defendant and similar defendants.

**(7) The need to provide restitution.**

The United States does not seek restitution.

## RECOMMENDATION

For a period of approximately four months in 2006, Galvez destroyed documents and lied to a federal grand jury for the purpose of protecting himself, as well as Daniel Curran and Edward Chua, who were responsible for submitting approximately $40 million worth of fraudulent claims to the Ex-Im Bank. The documents destroyed by Galvez and at his direction were proof that for a period of several years, Curran and Chua were falsifying commercial invoices that were sent to lending banks and to the Ex-Im Bank, and in so doing, illegally pocketing millions of dollars. As a result of Galvez's conduct, the investigation into the Curran and Chua scheme to defraud the Ex-Im Bank was hindered and delayed. Even after pleading guilty and signing a Statement of the Offense detailing how he executed his crimes, Galvez has continued to lie to the Probation Office by stating that he thought the invoices he destroyed were "irrelevant" and he only destroyed a "few" invoices. These statements conflict with Galvez's own admissions, as well as the testimony of other witnesses, and illustrate the fact that even after pleading guilty to two serious felonies, Galvez has not learned his lesson.

Due to the serious nature of the crime, Galvez's role in the crime, Galvez's decision to continue lying about his role in the crime even after pleading guilty, and the need to deter future criminal conduct, the United States recommends that Galvez be sentenced to 15 months in prison, followed by a two year term of supervised release, and be fined $30,000. *See United States v. Rita*, ___ U.S. ___, 127 S. Ct. 2456, 2465 (2007) ("when the judge's discretionary decision accords with the [Sentencing] Commission's view of the appropriate application of §

3553(a) in the mine run of cases, it is probable that the sentence is reasonable"); *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness" by an appellate court).

          Respectfully submitted,

          JEFFREY A. TAYLOR
          United States Attorney
          In and For the District of Columbia

By:    /S/ Michael K. Atkinson
          MICHAEL K. ATKINSON
          D.C. Bar # 430517
          Assistant United States Attorney
          555 4th Street, N.W.
          Washington, D.C.  20530
          (202) 616-3702


          STEVEN A. TYRRELL
          Chief, Fraud Section
          Criminal Division
          United States Department of Justice

By:    /S/ Hank Bond Walther
          HANK BOND WALTHER
          D.C. Bar # 477218
          Trial Attorney
          Fraud Section, Criminal Division
          United States Department of Justice
          1400 New York Avenue, NW
          Washington, D.C. 20005
          (202) 257-6176

Date:   December 13, 2007